UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STUART C. IRBY COMPANY,

    Plaintiff,

v.                          Case No: 2:16-cv-211-FtM-29CM

BC POWER, INC.,

    Defendant.

**OPINION AND ORDER**

This matter comes before the Court on the plaintiff's Motion for Summary Judgment (Doc. #75) filed on April 10, 2017. Defendant BC Power, Inc. filed a Response in Opposition (Doc. #79) on May 10, 2017.[1] For the reasons set forth below, the motion is granted in part and denied in part.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the

---

[1] On March 9, 2017, the Court granted a voluntary dismissal of defendants Brooks & Freund, LLC and Western Surety Company, and dismissed these defendants with prejudice. (Doc. #69.) Judgment (Doc. #70) was filed the same day. Therefore, BC Power, Inc. (BC Power) is the only remaining defendant.

record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more

than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

**II.**

The undisputed facts, in a light most favorable to BC Power, Inc., are as follows:

BC Power, Inc. (BC Power) is an electrical contractor which entered into a subcontract with Brooks & Freund, LLC (Brooks) to perform work on a project called the Orchid Run Apartments, LLC (the Project) in Collier County, Florida. On July 31, 2012, BC Power executed a Commercial Credit Application (the "Credit Agreement") (Doc. #17-3) with plaintiff Stuart C. Irby Company (Irby), an electrical material supplier, and established an open account with Irby to purchase electrical materials for use in connection with the Project. Irby sold electrical materials to BC Power for use in the Project, but BC Power failed to fully pay for the materials. The unpaid principal amount is $46,145.05.

Brooks did not fully pay BC Power for the subcontract work, and allegedly owed BC Power an unpaid principal amount of $685,967.42. On or about February 24, 2016, BC Power executed an Assignment of Accounts Receivable (the "Assignment") transferring to Irby its interest in the $685,967.42 owed by Brooks. (Doc.

#17-6.) On or about January 10, 2017, Brooks paid Irby $40,000 pursuant to a settlement of the $685,967.42 debt. Irby will apply the $40,000 to the balance owed it by BC Power.[2]

Irby now seeks judgment against BC Power for the outstanding unpaid principal balance (less the $40,000), plus accrued service charges in the amount of $9,036.96, plus accrued interest, for a total of $17,475.99 for the breach of the Credit Agreement by BC Power. (Doc. #75, pp. 4-5; Doc. #75-1, Exh. A.) Irby also seeks post-judgment interest, and asserts an entitlement to attorney fees and costs.

## III.

BC Power argues that Irby is not entitled to summary judgment because there is a material question as to whether Irby is entitled to recover any amount of the unpaid principal balance. Specifically, BC Power asserts that Irby expressly agreed, and owed a duty to BC Power, to recover the full amount of the accounts receivables from Brooks, which were the subject of the Assignment. BC Power further asserts that Irby assumed a fiduciary-type role by agreeing to protect BC Power's interest and to fight for full

---

[2] Western Surety Company was the surety on the Payment Bond signed by Brooks as contractor for the Project. (Doc. #17-2, Exh. 2.)

4

recovery of the receivables. BC Power asserts that because the settlement was a breach of this obligation, it does not owe any money to Irby (and Irby owes BC Power money). (Doc. #79, p. 3.)

BC Power's arguments are without merit because the Assignment creates no such obligation or fiduciary-type relationship between BC Power and Irby. The Assignment states that it is governed by Mississippi law (Doc. #17-6, ¶6), which provides the following with regard to the interpretation of a contract:

> First, we must determine whether the contract is ambiguous, and if it is not, then it must be enforced as written. [ ] In making that determination, the Court must review the express wording of the contract as a whole. [ ] If the contract is unambiguous, "the intention of the contracting parties should be gleaned solely from the wording of the contract" and parole evidence should not be considered. [ ] This Court must "accept the plain meaning of a contract as the intent of the parties where no ambiguity exists." [ ] "'An instrument that is clear, definite, explicit, harmonious in all its provisions, and is free from ambiguity' will be enforced." [ ]
>
> "The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." [ ] "Where the contract is unambiguous, the 'parties are bound by the language of the instrument.'" [ ] Courts should not alter the terms of a valid contract. "The right of persons to contract is fundamental to our jurisprudence and absent mutual mistake, fraud[,] and/or illegality, the courts do not have the authority to modify, add to, or subtract from the terms of a contract validly

5

> executed between two parties." [ ] "With
> limited exceptions, persons enjoy the freedom
> to contract. When they do, they are bound by
> the terms of their contracts."

Epperson v. SOUTHBank, 93 So. 3d 10, 16-17 (Miss. 2012) (internal citations omitted). In a summary judgment case, Mississippi advises that the reviewing Court "should determine only whether the contract is ambiguous." Id. at 17. If the terms are ambiguous, then the case must be submitted to the trier of fact and summary judgment denied. Id.

The Assignment (Doc. #17-6) in this case is not ambiguous. The Assignment is clear that the intention of the parties was not to create any type of fiduciary relationship or obligation toward BC Power. BC Power transferred the accounts receivables, i.e., it "grants, sells, conveys, assigns, transfers, and delivers" those receivables to Irby. (Doc. #17-6, ¶ 2.) This transfer was "forever." (Id.) The transfer involved "all of its right, title and interest in and to the Accounts Receivables". (Id.) Thus, BC Power retained no interest of any kind in the receivables, and there were no restrictions on what could be done with the accounts receivables. Additionally, BC Power recognized that the assignment did not relieve BC Power of any of its obligations to Irby. (Id. at ¶ 5.) In light of the clear and unequivocal language

of the Assignment, the parole evidence from Bruce Collins is not, and cannot be made, admissible.

The Court finds that Irby is entitled to summary judgment on its claim and to recover from BC Power. Only the amount of recovery need be determined. BC Power does not address, and therefore does not dispute, the amounts.

*Invoices (Principal)*

The claim against BC Power is for breach of the Credit Agreement. The Terms and Conditions of Sale for the Credit Agreement provide:

> . . . if an invoice or obligation of Customer is not paid by the net due date indicated on Irby's Invoice to Customer, Irby shall levy a "service charge" to cover the additional cost of handling the account in an amount equal to one and one-half percent (1.5%) per month or part thereof until paid[.] Customer acknowledges and agrees that the charge is a "service charge" levied by Irby to reimburse Irby for the additional cost of carrying its delinquent account and that such charge is not an interest charge.
>
> . . .
>
> If it becomes necessary for Irby to retain legal or collection agency assistance to collect an overdue account, Customer shall pay all such costs of same, including any necessary and related incidental expenses (collectively "Collection Costs").

(Doc. #17-3, Exh. 3, p. 4.) The invoices for the electrical material total $50,890.52, however the Second Amended Complaint

7

provides that the unpaid principal amount is $46,145.05. (Doc. #17, ¶ 22; Doc. #17-4, Exh. 4.) After subtracting the $40,000 amount of the Brooks settlement, this leaves a total of $6,145.05 still due from BC Power under the invoices. The Court will award this principal amount.

***Service Charges***

Irby seeks $9.036.96 in service charges for the period of the due date on each individual invoice through January 10, 2017, the date on which Brooks made the settlement payment towards the balance. (Doc. #75-1, Exh. A.) The Terms and Conditions allow Irby to levy a "service charge" for the additional cost of handling collection on the debt. As this is a specified contractual term, the request will be granted in the amount of $8,875.37, based on the Court's calculations below.

The permitted service charge is an amount equal to 1.5% per month or part of a month of the unpaid invoice as of the net due date until paid. The Court agrees with the dates used by Irby, including the end date of January 10, 2017, and the amount of the monthly service charge. However, Irby applied the formula to the exact number of days past due at a daily service charge. The Court declines to do so as the provision specifies per month or part of a month, resulting in a slightly lower amount as follows:

8

| NET DUE DATE | UNTIL PAID DATE | INVOICE AMOUNT | MONTHLY 1.5% CHARGE | NUMBER OF MONTHS | SERVICE CHARGE |
|---|---|---|---|---|---|
| 11/25/2015 | 1/10/2017 | 5,968.60 | 89.53 | 13.5 | 1,208.65 |
| 11/25/2015 | 1/10/2017 | 8,915.40 | 133.73 | 13.5 | 1,805.35 |
| 12/25/2015 | 1/10/2017 | 29,680.80 | 445.21 | 12.5 | 5,565.12 |
| 12/25/2015 | 1/10/2017 | 1,580.25 | 23.70 | 12.5 | 296.25 |
| **TOTAL:** | | 46,145.05 | | | **8,875.37** |

*Prejudgment Interest*

Whether plaintiff is entitled to prejudgment interest is a question of state law. Venn v. St. Paul Fire & Marine Ins. Co., 99 F.3d 1058, 1066 (11th Cir. 1996). Generally, under Florida contract law[3], the "the prevailing party receives prejudgment interest on its award." Blasland, Bouck & Lee, Inc. v. City of N. Miami, 283 F.3d 1286, 1297 (11th Cir. 2002). Prejudgment interest is an element of pecuniary damages, and is based on the statutory rate from the date of the liquidated loss until the entry of judgment. Argonaut Ins. Co. v. May Plumbing Co., 474 So. 2d 212, 214-215 (Fla. 1985). When deciding to award prejudgment interest, certain equitable factors may be considered, such as if the delay between the injury and judgment is the fault of the prevailing party, or if the party failed to mitigate its damages. Blasland,

---

[3]Both parties assume that the Credit Agreement is governed by Florida law, and the Court will do the same.

9

Bouck & Lee, Inc. v. City of N. Miami, 283 F.3d 1286, 1297 (11th Cir. 2002).

Irby seeks prejudgment interest on the entire unpaid balance of $46,145.05, as of December 25, 2015, the last net due date listed on the invoices. However, the amount of liquidated loss was not determined until January 10, 2017, after Irby exercised its assigned rights against Brooks to reach a settlement for an amount less than the total of the invoices. The Court finds that Irby is "equitably entitled to prejudgment interest only on the net wrong it suffered, not the gross wrong." Blasland, Bouck & Lee, Inc. v. City of N. Miami, 283 F.3d 1286, 1299 (11th Cir. 2002). The prejudgment interest will only be applied to the remaining balance as of January 10, 2017, as set off by the $40,000 payment by Brooks.

As established by Florida's Chief Financial Officer[4], the per annum interest rate as of January 1, 2017, was 4.97% or a daily rate of .0001361644.[5] Applying this daily rate to the remaining balance of $6,145.05, and then multiplying that sum by 329 days

---

[4] Under Fla. Stat. § 55.03(1), it is the Chief Financial Offer that sets the quarterly rates of interest.

[5] https://www.myfloridacfo.com/Division/AA/Vendors/.

from January 10, 2017, through the date of this Opinion and Order, the total is $275.29.[6]

***Attorney Fees***

"Attorney's fees incurred while prosecuting or defending a claim are not recoverable in the absence of a statute or contractual agreement authorizing their recovery." Port-A-Weld, Inc. v. Padula & Wadsworth Const., Inc., 984 So. 2d 564, 568 (Fla. 4th DCA 2008) (citing Price v. Tyler, 890 So. 2d 246, 250 (Fla. 2004)).  See also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975).

Although a provision exists for a Guarantor to pay 20% of the account balance as attorney's fees and costs of collection, the provision was not signed "below" by any individual, and Mr. Collins is not individually named as a party to this suit.  Further, no provision for attorney's fees is contained in the Terms and Conditions of Sale.  (Doc. #17-3, Exh. 3, pp. 3-4.)  Finding no statutory basis articulated, and no contractual basis shown, the request for attorney's fees will be denied.

---

[6] Formula applied:  daily rate (.0001361644) x balance ($6,145.05) = 0.8367 x 329 days = total.

*Post-Judgment Interest*

Unlike prejudgment interest, post-judgment interest is calculated under federal law, and "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). The rate is computed daily, and compounded annually. The Treasury constant maturities Nominal 1-year rate is 1.62% per annum as of December 1, 2017, the week preceding the date of judgment. Applying this rate, multiplied by the principal amount owing, and divided by 365 days, this results in a daily rate of 0.2407.[7]

Accordingly, it is now

**ORDERED:**

1. Plaintiff's Motion for Summary Judgment (Doc. #75) is **GRANTED IN PART** in favor of Irby and against BC Power.

2. Plaintiff is awarded the Principal amount of $6,145.05; Service charges in the amount of $8,875.37; Prejudgment interest from January 10, 2017, through the date of this Opinion and Order in the amount of $275.29; and Post-judgment interest from the date of the Judgment at the

---

[7] Formula applied: Treasury Nominal 1-year percentage rate (0.0162) x principal amount ($6,145.05) = $99.55/365 days = daily rate (0.2727).

daily rate of 0.2727 until paid.  This provides a total of $15,295.71, accruing at a daily post-judgment daily rate of 0.2727 until paid.

3. The request for attorney's fees is **DENIED**.

4. The Clerk shall enter judgment accordingly as set forth in paragraphs 1 through 3, terminate all pending motions and deadlines as moot, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __5th__ day of December, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record